BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
MEDITERRANEAN SHIPPING COMPANY S.A.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MEDITERRANEAN SHIPPING
COMPANY S.A.,                                              06 CV 3391 (MGC)

               Plaintiff,                              **SECOND AMENDED**
                                                           **VERIFIED COMPLAINT**
   -against-

NINGBO TOPTRADE IMP. EXP. CO.
LTD., TOPTRADE RECYCLING (USA)
INC., and NEWDEH LEE, an Individual,

               Defendants.
----------------------------------------------------------X

      Plaintiff, MEDITERRANEAN SHIPPING COMPANY S.A. ("Plaintiff"), by its attorneys, Brown Gavalas & Fromm LLP, as and for its Second Amended Verified Complaint against Defendants NINGBO TOPTRADE IMP. EXP. CO. LTD., TOPTRADE RECYCLING (USA) INC., and NEWDEH LEE, an individual (hereinafter collectively the "Defendants"), alleges upon information and belief as follows:

      1.  This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  The Court has jurisdiction under 28 U.S.C. § 1333.

      2.  The Court has supplemental jurisdiction of any non-admiralty claims under 28 U.S.C. Section 1367.

      3.  At all material times, Plaintiff was and now is a corporation duly organized and existing under and by virtue of the laws of Switzerland, and is engaged in the business of

carrying goods for hire on ocean-going vessels.  At all material times, Plaintiff was the owner and/or operator of the motor vessel M/V MSC AMSTERDAM (the "Vessel").

4. Upon information and belief, at all material times, Defendant Ningbo Toptrade Imp. Exp. Co., Ltd. (hereinafter "Ningbo") was and still is a corporation organized and existing under and by virtue of the laws of the People's Republic of China (P.R.C.), with a principal place of business in Shanghai, P.R.C.  Upon information and belief, at all material times, Ningbo was and still is engaged in the business of an importer, exporter, manufacturer and final user of steel iron scrap, mixed metals scrap, and other goods and was and is still doing business within the Court's jurisdiction.

5. Upon information and belief, at all material times, Defendant Toptrade Recycling (USA) Inc. (hereinafter "Toptrade") was and is still a California corporation with its principal place of business in Arcadia, California, and was and is still doing business within the Court's jurisdiction.

6. Upon information and belief, Defendant Newdeh Lee (hereinafter "Lee") is an individual who conducts business within the Court's jurisdiction.  Upon information and belief, Lee is and at all material times was the President of Ningbo and Toptrade and the owner, shareholder and/or principal of Ningbo and Toptrade.

7.  There exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants Ningbo, Toptrade and Lee, such that any individuality and separateness between Defendants have ceased, and Defendants, and each of them, are the alter egos of each of the other Defendants.  Upon information and belief, Defendants Ningbo, Toptrade and Lee, and each of them, completely controlled, dominated, managed, and operated each other, and/or disregarded their corporate form, and/or conducted business and operations of each of the entities as if the same were their own.

8. Adherence to the fiction of the separate existence of the defendant corporations as entities distinct from one another and/or the separate existence of individual defendant Lee distinct from said corporate defendants would permit an abuse of the corporate privilege and

would sanction fraud and promote injustice given the tortious and fraudulent conduct of said Defendants as alleged more particularly below.

9.  On or about September 30, 2005, "to order" bill of lading no. MSUDN 065539 ("Bill of Lading") was issued by Plaintiff at Durban, South Africa, evidencing a shipment of 18 containers said to contain copper cathodes ("Cargo").  According to the Bill of Lading, the said Cargo was to be transported aboard the Vessel from Durban to Shanghai, P.R.C.

10.  Plaintiff did safely transport the Cargo aboard the Vessel to Shanghai, where the Vessel arrived on or around October 23, 2005.

11.  At the time of the Vessel's arrival in Shanghai, and prior to discharge of the Cargo, Defendants and/or persons or entities acting for Defendants, presented a document to the master of the Vessel purporting to be the Bill of Lading issued at the Port of Durban.

12.  The document presented to the Vessel at Shanghai by Defendants and/or their agents, servants and/or representatives was not the Bill of Lading issued at Durban but was, instead, a fraudulent document intended to induce Plaintiff to deliver the Cargo to Defendants.

13.  On the basis of Defendants' wrongful and tortious conduct, and each of them, including tender of a fraudulent bill of lading for purposes of converting the Cargo, Plaintiff provided a delivery order to Defendants and those acting for an on behalf of Defendants, which enabled Defendants to obtain customs clearance for these goods.  When the holder of the correct Bill of Lading presented this demanding delivery of the Cargo, the Shanghai Customs Authorities refused to provide the rightful receiver with customs clearance and the Cargo remains in the control of the Shanghai Customs Authorities to this date.

14.  In furtherance of their wrongful and tortious conduct, Defendants caused an action to be filed against Plaintiff in the Maritime Court of Shanghai, P.R.C. alleging, among other things, that Defendants are entitled to the Cargo or, in lieu thereof, the value of said Cargo, alleged to be $1,377,471.25 ("the Shanghai Action").  Said allegations by Defendants are false, made without basis or foundation and intended to perpetuate Defendants' fraudulent behavior.  A true and correct copy of the Defendants' claim in the Shanghai Action is attached hereto as Exhibit "A".

15. In furtherance of their wrongful and tortious conduct, Defendants caused certain documents to be submitted in the Shanghai Action for the purpose of proving Defendants' alleged title to the Cargo. These documents include a "Sales Confirmation" and a "Buying & Selling Certificate", a Commercial Invoice and Packing List issued by a company called "Transworld International Ltd." based in London, United Kingdom. On information and belief, these and other documents submitted by Defendants in the Shanghai Action are fictional in that, *inter alia*, they identify business entities that do not exist and set out other details that, based on ongoing investigations, are fictional, false, intended to deceive, and for the purpose of wrongfully attempting to claim title to the Cargo, or the value thereof.

## FIRST CAUSE OF ACTION
### (Indemnity Against Defendants)

16. Plaintiff realleges and incorporates by reference as though set forth at length its allegations in paragraphs 1 through 15, inclusive, set forth herein above.

17. As a consequence of Defendants' wrongful and fraudulent behavior, a lawsuit has been filed on February 13, 2006, against Plaintiff in the High Court of Justice, Queen's Bench Division, Commercial Court, Claim No. 2006 Folio 107 by Trafigura Beheer BV and Shanghai HMC Co. Ltd. ("London Claimants"). The London Claimants seek damages and the entry of a judgment against Plaintiff in the amount of $1,864,823.23 in respect of the value of the cargo, US$1,146,090.60 in respect of hedging losses and US$154,343.72 for backwardation costs, plus interests and costs.

18. In their action against Plaintiff, the London Claimants allege that they "were the owners of the Cargo and/or became the lawful holders of the Bill of Lading." The London Claimants also claim that Plaintiff should not have delivered the Cargo to the Defendant Ningbo and that, as a consequence, Defendant Ningbo converted the Cargo. A copy of the pleadings filed by the London Claimants against Plaintiff is attached to the Amended Verified Complaint as Exhibit "B".

19. As a consequence of the lawsuit filed against Plaintiff by the London Claimants, Plaintiff may be adjudged liable to the London Claimants for damages of $3,165,257.55, plus interest and costs. In addition, Plaintiff has incurred, and will continue to incur legal costs, including attorneys' fees, in order to defend the lawsuit commenced against Plaintiff by the London Claimants.

20. Plaintiff is presently exposed to a judgment of $3,165,257.55 and is continuing to incur losses as a direct consequence of Defendants' wrongful conduct, including tender of a fraudulent bill of lading for purposes of converting the Cargo. Therefore, Plaintiffs will be entitled to indemnity from Defendants, and each of them. The present action is in aid of securing a judgment or award against Defendants requiring Defendants to indemnify Plaintiff for any liability it may have to the London Claimants.

21. In addition to obtaining indemnity from Defendant for the full amount of Plaintiff's liability to the London Claimants, Plaintiff is also entitled to recover from Defendants any and all legal expenses, including reasonable attorneys' fees and costs, that will be incurred in the lawsuit commenced by the London Claimants. As best as can be determined at the present time, said legal expenses, including reasonable attorneys' fees, will be approximately $500,000.00.

## SECOND CAUSE OF ACTION

**(Fraud and Deceit Against Defendants)**

22. Plaintiff realleges and incorporates by reference as though set forth at length its allegations contained in paragraphs 1 through 21, inclusive, set forth herein above.

23. In or about October, 2005, Defendants, and each of them, committed fraud by presenting a false and fraudulent bill of lading to Plaintiff in order to induce Plaintiff to deliver the Cargo to them.

24. The Defendants, and each of them, knew, at the time the false and fraudulent bill of lading was presented to Plaintiff that the bill of lading was false and that they were not entitled to delivery of the Cargo.

25. Defendants, and each of them, committed the fraud with the intent to defraud and deceive Plaintiff and the lawful owners of the Cargo and with the intent to induce Plaintiff to deliver the Cargo.

26. Plaintiff, at the time it received the false and fraudulent bill of lading was unaware of that the bill of lading was false and fraudulent and believed the bill of lading was genuine.

27. In reliance on the false and fraudulent bill of lading, Plaintiff provided the Defendants with a delivery order in respect of the Cargo in Shanghai. Had Plaintiff known the true facts, Plaintiff would not have issued a delivery order to Defendants. Plaintiff's reliance on the false and fraudulent bill of lading was justified.

28. Further, the Defendants knowingly and with the intent to defraud and deceive Plaintiff and the lawful owners of the Cargo, falsely continued to maintain the authenticity of the bill of lading they held (despite acknowledging in writing to the rightful consignee that they held the "wrong" bill of lading) and produced additional documents in support of their claim, which documents are also fraudulent, and commenced the Shanghai Action against Plaintiffs claiming entitlement to the Cargo in furtherance of their fraud and deceit.

29. As a proximate result of the fraudulent and deceitful conduct of Defendants, and each of them, Plaintiff has been sued by the London Claimants in the London High Court of Justice and may become liable to the London Claimants for the delivery of the Cargo. Plaintiff may be adjudged liable to the London Claimants for damages of $3,165,257.55, plus interest and costs, and Plaintiff has incurred, and will continue to incur, legal costs, including attorneys' fees, in order to defend the lawsuit commenced against Plaintiff by the London Claimants.

30. By reason of the matters set forth hereinabove, Defendants, and each of them, are liable to Plaintiff for any and all damages caused by their fraud and deceit, including, without limitation, liability to indemnify Plaintiff for any and all liability incurred by Plaintiff to the London Claimants, as well as the legal costs and attorneys' fees incurred by Plaintiff in defending the lawsuit brought by the London Claimants in the London High Court of Justice. As

best as can be determined at the present time, said legal expenses, including reasonable attorneys' fees, will be approximately $500,000.00.

31.  Plaintiff realleges and incorporates by reference as though set forth herein at length its allegations contained in paragraphs 1 through 30, inclusive, set forth hereinabove.

32.  Upon information and belief, Defendants, and each of them, wrongfully interfered with Plaintiff's possession of the Cargo by inducing Plaintiff to deliver the Cargo, and/or attempted to take delivery and possession of the Cargo at Shanghai notwithstanding they were not the rightful owner of the Cargo or the person or entity entitled to delivery of the Cargo and they are pursuing a claim against the Plaintiff seeking such delivery in the Shanghai Action.

33.  By wrongfully interfering with Plaintiff's right to possession of the Cargo, Defendants, and each of them, are liable for conversion of the Cargo.

34.  By reason of the foregoing, Defendants, and each of them, are liable for conversion and Plaintiff is entitled to recover any damages it sustains as result of said conversion of property.

35.  Upon information and belief, Defendants cannot be found within the District, within the meaning of Supplemental Rule B of the Federal Rules of Civil Procedure, but are believed to have or will have during the pendency of this action assets within this District, specifically including cash, funds, freight, hire, accounts and other property, in the hands of garnishees in the District including but not limited to American Express Bank, Ltd.; ABN-AMRO Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank; Bank of China and Wachovia Bank, which are believed to be due and owing to Defendants.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, as follows:

A.  That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Second Amended Verified Complaint;

B. That since the Defendants cannot be found within this District, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including American Express Bank, Ltd.; ABN-AMRO Bank; Bank of America; BNP New York; Bank of New York; J.P. Morgan Chase; Citibank; Bank of China and Wachovia Bank, which are due and owing to the Defendants, in the amount of $3,665,257.55, to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

C. That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
December 21, 2006

BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
MEDITERRANEAN SHIPPING
COMPANY S.A.

_____
Peter Skoufalos (PS-0105)
355 Lexington Avenue
New York, NY 10017
(212) 983-8500

8