```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
MEDITERRANEAN SHIPPING
COMPANY S.A.,

                    Plaintiff,          OPINION

          -against-                     06 CIV 3391 (MGC)


NINGBO TOPTRADE IMP. EXP. CO.
LTD., TOPTRADE RECYCLING (USA)
INC., and NEWDEH LEE, an
Individual,

                    Defendants.

---------------------------------X

APPEARANCES:

          BROWN GAVALAS & FROMM LLP
          Attorneys for Plaintiff

          By:  Peter Skoufalos, Patrick R. O'Mea


          HILL RIVKINS LLP
          Attorneys for Defendants

          By:  Brian P. R. Eisenhower
```

**Cedarbaum, J.**

Mediterranean Shipping Company S.A. ("MSC") brings this

action for indemnity and fraud against defendants Ningbo

Toptrade Import Export Co. Ltd. ("Ningbo"), Toptrade Recycling

(USA), Inc., and Newdeh Lee based on an alleged attempt to steal

a cargo of copper cathodes shipped by MSC from South Africa to

China.  MSC previously obtained a Rule B order of attachment

from this Court against Ningbo, pursuant to which the Bank of New York Mellon attached a Ningbo-originated wire transfer of funds.  MSC later enforced in this Court an English court judgment against Ningbo regarding the incident.

Ningbo appealed.  The Second Circuit vacated that judgment and remanded with instructions to 1) state if admiralty jurisdiction exists over the suit and 2) decide the fate of the attached funds given a subsequent, unrelated decision, <u>Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58 (2d Cir. 2009), which held that electronic fund transfers being processed by an intermediary bank in New York were not subject to Rule B attachment.

This opinion lays out the basis for jurisdiction.  After additional briefing, the second question will be answered separately.

### BACKGROUND[1]

MSC is a Swiss shipping company involved in the shipment of goods throughout the world.  In order for MSC to transport cargo, the shipping merchant electronically sends MSC shipping instructions.  The shipping instructions include information regarding the vessel name, beginning port, ending port, consignee, and containers holding the cargo.  MSC uses this

---

[1] These allegations are based on the complaint and the materials submitted by plaintiff, particularly a declaration by an MSC employee named Rosario Sarno.

information to create a bill of lading.  An MSC employee uses
the bill of lading to input the shipping information into the
MSC computer system.  The system then generates a cargo manifest
for the vessel (reflecting the shipping information) that is
sent to customs in South Africa and to MSC agents at the
destination port.  Once the vessel sails and the shipper pays
its dues, an MSC employee signs three "original" copies of the
bill of lading and gives them to the shipper.  Several other
copies of the bill of lading are placed in MSC's records.  The
bill of lading acts as the shipper's receipt: it is presented to
MSC agents at the destination port in order to release the
cargo.

In September 2005, MSC was hired to transport eighteen
containers of copper cathodes from Durban, South Africa, to
Shanghai, China aboard its vessel, the MSC Amsterdam.  MSC
issued a bill of lading numbered 065539 for the cargo.  The
cargo arrived in Shanghai in late October 2005.  Ningbo
presented a bill of lading numbered 065539 for the cargo at the
port.  That bill of lading listed Ningbo as the consignee (the
buyer), which matched the cargo manifest received by MSC's
agents in Shanghai.  Before Shanghai customs finished processing
the cargo for release to Ningbo, however, an entity called
Shanghai HMC presented a second bill of lading also numbered

065539 for the cargo.[2]  The customs officials then refused to
release the cargo to either party.

The copies of the bill of lading retained in MSC's files in
Durban reflect the information on Shanghai HMC's bill of lading,
not the information on Ningbo's bill of lading or on the
manifest.  MSC asserts that Ningbo must have falsified a bill of
lading on MSC letterhead and somehow altered the data in MSC's
computer system (thus altering the manifest).

Shanghai HMC subsequently sued MSC in the English High
Court of Justice for breach of a contract of carriage, obtaining
judgment against MSC in April 2007.  MSC then sued the
defendants from this action and other parties in English court
for the losses suffered in the Shanghai HMC action.  The English
court entered judgment against Ningbo in October 2008.[3]

---

[2] The complaint asserts that the cargo remained on the ship when
Ningbo presented the fraudulent bill of lading, but, as
defendants point out, a declaration of MSC's English lawyer
states that (inconsistent with the declaration of an MSC
employee, Dkt. 29-3) the cargo was discharged on October 24 and
that Ningbo presented the fraudulent bill of lading on October
25.  Dkt. 29.  Although the English lawyer's declaration may be
disregarded due to her lack of personal knowledge, see Kamen v.
Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986), given
the discrepancy, the jurisdictional analysis will not rely on
where the cargo was when Ningbo presented the fraudulent bill of
lading.

[3] To briefly summarize the relevant procedural history before
this Court, MSC commenced this action in May 2006.  In May 2007,
a Rule B order of attachment of Ningbo's property reflecting
MSC's liability in the Shanghai HMC action was issued.  The Bank
of New York Mellon attached a wire transfer originated by Ningbo

## STANDARD OF REVIEW

The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In determining whether subject-matter jurisdiction exists, courts must "constru[e] all ambiguities and draw[] all inferences in a plaintiff's favor."  Id.  Affidavits and other materials outside the pleadings may be considered in making the jurisdictional finding.  Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

## DISCUSSION

Federal courts have power under the Constitution to hear "all Cases of admiralty and maritime Jurisdiction."  U.S. Const., Art. III, § 2.  Congress embodied that power in a statute providing "original jurisdiction" over "[a]ny civil case of admiralty or maritime jurisdiction."  28 U.S.C. § 1333(1). The Supreme Court has stated that "the primary focus of

---

in July 2007.  Defendants moved to dismiss the case for lack of subject matter jurisdiction, and that motion was denied as premature in March 2009, due to a pending identical action in California district court.  MSC later dismissed the California suit, and moved in this Court to enforce the English court judgment it obtained against Ningbo.  That motion was granted and judgment entered in September 2010.  After defendants' appeal to the Second Circuit, the case is now before this Court again on instruction to state the ground for jurisdiction. Mediterranean Shipping Co. S.A. v. Lee, 449 Fed. Appx. 83 (2d Cir. 2012).

admiralty jurisdiction is unquestionably the protection of maritime commerce." Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674 (1982).

This case involves the disruption of maritime commerce. MSC seeks noncontractual, or tort, indemnity for liability resulting from the breach of its contract to ship copper cathodes to Shanghai HMC. Although admiralty jurisdiction exists over a tort claim generally where the "conditions both of location and of connection with maritime activity" are satisfied, Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995), an indemnity claim falls under admiralty jurisdiction if the claim is derived from an underlying maritime cause of action. Vaughn v. Farrell Lines, Inc., 937 F.2d 953, 956 (4th Cir. 1991) ("noncontractual indemnity claim arising" from an "underlying . . . maritime tort claim[]" is "similarly a maritime claim" (internal quotation marks omitted)); Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co., 60 F. Supp. 2d 1285, 1288 (M.D. Fla. 1999) (discussing the "well-established case law where federal appellate courts have recognized that indemnity actions fall within federal admiralty jurisdiction where the indemnity actions are derived from maritime torts or contracts"); Int'l Cruise Shops, Ltd. v. MCI Exp., Inc., 2006 WL 2869531, at *1 (E.D. Pa. Oct. 5, 2006) ("for there to be admiralty jurisdiction in an indemnity action . . .

against a . . . third party tortfeasor" it must be "establish[ed] that the underlying injury occurred on navigable waters . . . ."); Schoenbaum, Admiralty and Maritime Law, § 5-19, at 336 (5th ed. 2011) ("There is admiralty jurisdiction over claims for contribution and indemnity if jurisdiction exists over the underlying cause of action.").

The cause of action giving rise to MSC's indemnity claim is Shanghai HMC's suit against MSC for breach of its contract to ship and deliver the cargo.  Thus, if that breach of contract action is a maritime claim, then maritime jurisdiction also exists over MSC's action for indemnity.  See, e.g., Orgulf Transp. Co. v. Hill's Marine Enterprises, Inc., 188 F. Supp. 2d 1056, 1060-62 (S.D. Ill. 2002) (finding admiralty jurisdiction over indemnity claim as a result of admiralty jurisdiction over underlying contract and tort claims).

The rule for exercising admiralty jurisdiction over contract claims is different from the Grubart rule for tort claims.  A contract claim falls within admiralty jurisdiction if "the subject-matter of the contract is purely or wholly maritime in nature."  Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000) (internal quotation marks omitted).  Relevant here, claims "arising from an alleged breach of a contract of carriage . . . lie[] within our admiralty jurisdiction."  Allied Chem. Int'l

<u>Corp. v. Companhia de Navegacao Lloyd Brasileiro</u>, 775 F.2d 476, 481 (2d Cir. 1985); <u>see also</u> <u>Leather's Best, Inc. v. S.S. Mormaclynx</u>, 451 F.2d 800, 807 (2d Cir. 1971) ("failure to deliver the container in violation of the contract of carriage is properly within federal admiralty jurisdiction").  Shanghai HMC's contract of carriage claim against MSC is therefore an admiralty claim, and MSC's action seeking indemnity for that breach of contract is consequently within the Court's admiralty jurisdiction.

*   *   *

There is no need to address whether this Court has original jurisdiction over MSC's fraud claim because supplemental jurisdiction under 28 U.S.C. § 1367(a) will suffice.  <u>See, e.g.</u>, <u>Norvel Ltd. v. Ulstein Propeller AS</u>, 161 F. Supp. 2d 190, 198 (S.D.N.Y. 2001) (exercising supplemental jurisdiction premised on admiralty jurisdiction).

**CONCLUSION**

This Court has jurisdiction over MSC's claims.  In accordance with the second part of the Second Circuit's mandate, MSC is now directed to submit its argument on "the fate of the attached funds in light of [the Second Circuit's] post-<u>Jaldhi</u> jurisprudence" and "the effect, if any, of MSC's attempt to execute against the judgment" by January 27, 2015. <u>Mediterranean Shipping Co. S.A. v. Lee</u>, 449 Fed. Appx. 83, 84

(2d Cir. 2012).  Defendants should submit their response by

February 6.

     SO ORDERED.

Date:      New York, New York
          January 6, 2015

                        S/_____
                            MIRIAM GOLDMAN CEDARBAUM
                          United States District Judge