```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MEDITERRANEAN SHIPPING
COMPANY S.A.,

                Plaintiff,          OPINION

        -against-                   06 CIV 3391 (MGC)


NINGBO TOPTRADE IMP. EXP. CO.
LTD., TOPTRADE RECYCLING (USA)
INC., and NEWDEH LEE, an
Individual,

                Defendants.

----------------------------------X

APPEARANCES:

        BROWN GAVALAS & FROMM LLP
        Attorneys for Plaintiff

        By:  Peter Skoufalos, Patrick R. O'Mea


        HILL RIVKINS LLP
        Attorneys for Defendants

        By:  Brian P. R. Eisenhower
```

**Cedarbaum, J.**

Mediterranean Shipping Company S.A. ("MSC") brings this maritime action against defendants Ningbo Toptrade Import Export Co. Ltd. ("Ningbo"), Toptrade Recycling (USA), Inc., and Newdeh Lee based on an alleged attempt to steal a cargo of copper cathodes shipped by MSC from South Africa to China. After remand from the Second Circuit, my recent ruling explained the

basis for admiralty jurisdiction. The focus of this case is now turned, in light of subsequent Second Circuit jurisprudence, to the fate of Ningbo's electronic fund transfer (EFT) attached by this Court. <u>Mediterranean Shipping Co. S.A. v. Lee</u>, 449 Fed. Appx. 83 (2d Cir. 2012). Because EFTs are no longer considered attachable property under <u>Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58 (2d Cir. 2009), the inappropriately attached funds will be returned to Ningbo.

## PROCEDURAL HISTORY

The allegations of this case have been set out previously. Dkt. 82. MSC commenced this action in May 2006. In May 2007, this Court issued a Rule B order of attachment against defendants' property, which reflected MSC's liability for failure to deliver the cargo to the lawful recipient. The Bank of New York Mellon then attached a $500,000 EFT originated by Ningbo in July 2007. In October 2008, MSC obtained an English court judgment against Ningbo for $2 million based on Ningbo's presentation of a fraudulent bill of lading. MSC moved to enforce that judgment in this Court in June 2010. That motion was granted, and final judgment was entered in this case in September 2010.

In October 2010, MSC caused a writ of execution to be served on Bank of New York Mellon in pursuit of the attached funds. When the bank did not comply, MSC sought a turnover

2

order in state court.  The bank, however, made a request to interplead the funds into the Southern District's registry, which this Court subsequently ordered.  The attached funds remain in the registry.

In the meantime, defendants appealed in November 2010.  The Second Circuit remanded with instructions for this Court to decide whether MSC's attempt to execute the judgment against the attached funds allows it to avoid Jaldhi's ruling that EFTs are not attachable property.  Mediterranean Shipping Co. S.A. v. Lee, 449 Fed. Appx. 83 (2d Cir. 2012).

At some point, MSC obtained the copper cargo at issue here, which had been held by the Shanghai authorities, and sold it for $3 million in June 2011.  Dkt. 43 ¶ 9.  MSC previously paid $2.6 million in December 2007 to satisfy an English judgment against it by the lawful (intended) recipients of the cargo, which reflected the value of the copper at the time plus the claimant's legal fees.  Dkt. 43-2, Exh. A.[1]

## DISCUSSION

In Supplemental Rule B attachment proceedings, quasi in rem jurisdiction "is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest."  Shipping Corp. of India Ltd. v. Jaldhi Overseas

---

[1] MSC has asserted that it has another $2.4 million in "legal costs and expenses."  Dkt. 43 ¶ 3.

Pte Ltd., 585 F.3d 58, 69 n.12 (2d Cir. 2009).  After the EFT was attached in this case, the Second Circuit held that such funds cannot be considered the property of the originator or beneficiary of the transfer for the purposes of Rule B.  Id. at 71.  That new rule applies retroactively, and requires undoing inappropriate attachments, including where "the plaintiff obtained a final judgment but has not executed it against the attached funds."  Eitzen Bulk A/S v. Ashapura Minechem, Ltd., 632 F.3d 53, 54 (2d Cir. 2011).

   Because federal maritime law does not provide guidance on whether EFTs are attachable property, the Second Circuit in Jaldhi looked to New York state law to answer that question. 585 F.3d at 70.  Courts in this jurisdiction have similarly relied on state law to determine the limits on vacating attachments.  In Eitzen, the Second Circuit stated that "attachments may be vacated at any time before property or debts are actually applied to the satisfaction of a judgment."  632 F.3d at 55 n.2 (citing N.Y. C.P.L.R. § 5239); see also A.P. Moller-Maersk A/S d/b/a Maersk Sealand v. Ocean Express Miami, 2012 U.S. Dist. LEXIS 109741, at *18 (S.D.N.Y. July 30, 2012)(where wrongly attached EFTs had "actually been released, or applied, to satisfy the judgment," the attachment could not be vacated).

The Second Circuit has, additionally, prohibited selective retroactive application of Jaldhi based on equitable considerations. Singoying Logistics Pte Ltd. V. Yi Da Xin Trading Corp, 619 F.3d 207, 214 (2d Cir. 2010); Eitzen, 632 F.3d at 55 ("[W]e have specifically forbidden resort to equitable considerations in addressing motions to vacate pre-Jaldhi attachment orders."). It is thus clear that pre-Jaldhi EFT attachments are to be vacated so long as the funds have not been applied to satisfy the judgment.

Here, the inappropriately attached funds have not been paid to MSC. They remain in the Southern District registry. These funds are not attachable property for Rule B purposes, and accordingly do not provide a basis for quasi in rem jurisdiction.

MSC's attempt to execute on the judgment does not alter this conclusion. Eitzen stated that erroneous attachments could only avoid undoing if they were used to execute on a judgment -- not merely if there had been an attempt to execute. The former requires an actual transfer of funds. In contrast, a final judgment in favor of a claimant seeking the attached EFT, by itself, does "nothing to alter the legal basis" of the retention of the funds. Eitzen, 632 F.3d at 54. Indeed, Black's Law Dictionary defines "execute" as "[t]o enforce and collect on (a money judgment)." Black's Law Dictionary (9th ed. 2009). MSC

did not collect, or actually apply, the attached funds to satisfy the money judgment, and therefore it did not execute on the judgment. In the absence of execution, the EFT attachment must be undone.

Nor will what MSC calls the "interests of justice" be considered as a reason for ignoring the rule of Jaldhi. This argument has been tried before and found "explicitly foreclosed by our case law." Sinoying, 619 F.3d at 215.

## CONCLUSION

The attachment of the EFT held in the Court registry is vacated. The funds shall be released from the registry in accordance with Ningbo's instructions to the Clerk of the Court.

No other valid basis for personal jurisdiction has been presented. MSC admits that Defendants cannot be found in this jurisdiction, and no assets (besides the EFT) have been attached in the seven years since the attachment was issued. Unless MSC can show, by March 23, 2015, a basis for personal jurisdiction over Defendants, the case is dismissed. See Sinoying, 619 F.3d at 214.

SO ORDERED.

Date:   New York, New York
        March 12, 2015

                                S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge